[Crim. No. 2846. Second Appellate District, Division Two.—April 28, 1936.]

THE PEOPLE, Respondent, v. HAZEL BELFORD GLAB et al., Appellants.

S. S. Hahn and W. O. Graf for Appellants.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

GOULD, J., *pro tem.*—Defendants were jointly charged by grand jury indictment with the crimes of forgery (Pen. Code, sec. 470) and preparing false evidence (Pen. Code, sec. 134). Defendant Fred Steeger pleaded guilty. Upon a jury trial his codefendant Glab was found guilty on both counts, and Clara Steeger, acquitted of the forgery charge, was found guilty of preparing false evidence. This appeal is prosecuted by both defendants Glab and Clara Steeger from the judgment of conviction and from the order denying their motion for new trial.

According to the evidence produced at the trial, defendant Glab, through defendant Fred Steeger, contacted Albert L. Cheney, a reputed millionaire, resulting in Mrs. Glab and Cheney living together in apartments in the city of Los Angeles from some time in September of 1934 until March 12, 1935, when they went to Las Vegas, Nevada, where Cheney died the next day. During the entire period of the association between Mrs. Glab and Cheney the latter was usually intoxicated. The day after Cheney's funeral Fred Steeger drove Mrs. Glab to a stationer's store where she bought some ink and an ink eradicator, advising Steeger that she wanted to do something with a paper in her possession with Cheney's signature upon it. In fact, in December, 1934, she had told Steeger that she had Cheney's signature upon a piece of paper, blank except for some numerals on the left-hand side. After the incident of the ink eradicator, it was testified by Steeger, Mrs. Glab wrote a will on the sheet of paper above Cheney's signature and the two Steegers then signed it as witnesses. This purported will was offered for probate in the Los Angeles County Superior Court and all three defendants there testified as to its validity—that it was written by Mrs. Glab at Cheney's request and witnessed by the Steegers, also at his request. Testimony of a handwriting expert was to the effect that the purported will was written on the paper after Cheney signed it and after certain numerals had been eradicated.

Taken as a whole, the testimony as to the guilt of defendants was clear and convincing and was ample to support the judgment. Indeed, appellants do not question the sufficiency of the evidence but center their attack upon the admission of certain evidence, claiming that had such improperly admitted proof been excluded there would then have been insufficient evidence to uphold the jury's verdict.

Especially do appellants stress the point that it was prejudicial and reversible error to permit Fred Steeger to testify. The case of the prosecution was built largely around the testimony of this witness, who told in detail of the introduction of Mrs. Glab to Cheney, their daily association together, the procuring of Cheney's signature on the blank piece of paper, the alteration of the paper by erasing the numerals, the forgery of the will and the false witnessing of it by himself and Clara Steeger. If this testimony was erroneously ad-

mitted, as claimed by appellants, it was highly prejudicial. In fact, without it, it would be difficult to sustain the conviction.

The objection to Steeger's testimony arises from the fact that on March 14, 1933, he was married at Los Angeles to appellant Clara Steeger, by a ceremony of marriage duly licensed and solemnized as provided by section 68 of the Civil Code. Upon the trial appellants at once raised the point that as the husband of his codefendant Clara Steeger he could not be called as a witness against her, and that to allow him to testify would be violative of the confidential communications provision of section 1881 (1) of the Code of Civil Procedure and of section 1322 of the Penal Code, expressly providing that neither a husband nor wife is a competent witness for or against the other in a criminal action to which one or both are parties, except with the consent of both. The prosecution then ·developed the fact that Steeger had been married before; that on November 19, 1913, he had married one Bessie Creamer; that the Creamer marriage had not, so far as Steeger knew, ever been annulled, and that no divorce had been granted with relation to his first marriage prior to his marriage to Clara Steeger in 1933. In fact, it was shown that Steeger was served with papers in a divorce suit brought by his first wife in about August, 1934, and the records of the divorce action of Bessie Creamer Steeger, as introduced in evidence, showed the entry of a final decree March 12, 1935.

With the testimony in this situation the trial court permitted Steeger to testify against the second wife, upon the theory that his ceremonial marriage to her was in fact no marriage at all, that therefore he was not her husband and that sections 1881 of the Code of Civil Procedure and 1322 of the Penal Code raised no bar to his testimony.

Decision as to the correctness of this ruling rests upon the interpretation of section 61 of the Civil Code, which provides that ''a subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband or wife, is illegal and void from the beginning, unless: 1. The former marriage has been annulled or dissolved. . . . 2. Unless such former husband or wife is absent, and not known to such person to be living for the space of five successive years immediately preceding such subsequent marriage, or is gener-

ally reputed or believed by such person to be dead at the time such subsequent marriage was contracted. In either of which cases the subsequent marriage is valid until its nullity is adjudged by a competent tribunal." The trial court was without authority, appellants urge, to summarily declare the second marriage of the witness Steeger and appellant Clara Steeger void, and, contend appellants, the objection to his testifying was good until that marriage had been declared void by a competent tribunal upon proper proceedings. It will be noted that section 61 of the Civil Code specifically provides that a subsequent marriage is illegal and void from the beginning unless the former marriage has been annulled or unless the former spouse "is absent and not known to such person to be living for the space of five successive years immediately preceding such subsequent marriage", in which cases the subsequent marriage is valid until nullified by judgment of court.

It is true that Fred Steeger testified that he had not heard from his first wife and had not seen her since he "left" her in 1928 until immediately preceding his marriage to appellant Clara Steeger on March 14, 1933; but nowhere in the testimony is there any suggestion that the first wife was generally reputed or believed to be dead, or that she was not known to Steeger to be living. On the contrary, it appears, at least inferentially, that he knew his first wife was living; but he explained his second marriage upon the plea that he thought his first wife had remarried, and he further testified that he did not find out his mistake until, after his marriage to Clara Steeger, he was served with divorce papers in an action brought by his first wife. Nowhere is it established that a full five-year period elapsed from the date of separation from the first wife in 1928 to the date of the second marriage in 1933, and the trial court might well have concluded from the testimony presented that the former wife had not been absent for the statutory period fixed by section 61 of the Civil Code. ▮ Furthermore, Steeger's testimony was that he "left" his first wife. Under such circumstances it was his duty to keep her advised of his whereabouts (*Jones* v. *Zoller*, 32 Hun (N. Y.) 280, 285), and it would be a legal inconsistency to predicate a presumption as to the death of a wife upon an absence resulting from the husband's "leaving" or deserting such wife and failing to keep in touch with her.

We must hold that the witness Steeger, although he had gone through a marriage ceremony in due form after obtaining a proper license to marry appellant Clara Steeger, was not brought within either of the exceptions of section 61 of the Civil Code, and that therefore his purported marriage to her was, as denominated by that section, "illegal and void from the beginning".

The status of such a purported marriage has been reviewed by our courts. In *Estate of Harrington*, 140 Cal. 244 [73 Pac. 1000, 98 Am. St. Rep. 51], upon which appellants place strong reliance, Harrington left his wife in Michigan and settled in California. After a period of about ten years, during which she did not hear from him, and believing him to be dead, as indeed he was reputed to be, the wife remarried in good faith one Carley, no divorce from Harrington having been procured. Harrington did not remarry. Upon the latter's death in California she sought to administer upon his estate under the claim that she was his widow. The court held that she was not the widow of Harrington, but the wife of Carley, her marriage to the latter coming within the exceptions of section 61 of the Civil Code and therefore being valid until declared null by a court of competent jurisdiction.

A situation more nearly in point with the facts of the instant case is presented by *Estate of Newman*, 124 Cal. 688 [57 Pac. 686, 45 L. R. A. 780]. There the wife, left alone in New Hampshire while the husband came to California and accumulated property, married another man, but with knowledge that her first spouse was living. In fact, at the very time of her bigamous marriage the first husband was sending her money for her support. Holding the second marriage illegal and void, the court allowed her as the widow of her first husband to administer in California upon his estate at his death.

The distinction between the two cases above referred to appears to be that in the Harrington case the subsequent marriage was valid until adjudged null by a competent tribunal, because at the time the wife remarried, her first husband was absent and not known to her to be living for a period of five successive years and was generally reputed to be dead; while in the Newman case the subsequent marriage was invalid and void because the wife at time of remarriage knew her first husband, although he had been absent more than

five years, was living. In the latter case no court adjudication was necessary to establish the nullity of the subsequent marriage. Proof of the facts was sufficient to establish the invalidity of the union. So in the case before us, the facts, not bringing the subsequent marriage of the witness Steeger to appellant Clara Steeger within either of the exceptions of section 61 of the Civil Code, branded the marriage as "illegal and void from the beginning".

An enlightening discussion of void and illegal marriages and the distinction between void and voidable unions is found in *Estate of Gregorson*, 160 Cal. 21 [116 Pac. 60, Ann. Cas. 1912D, 1124, L. R. A. 1916C, 697], wherein Mr. Justice Sloss lays down the rule that "a marriage prohibited as incestuous or illegal and declared to be 'void' or 'void from the beginning' is a legal nullity and its [in]validity may be asserted or shown in any proceeding where the fact of such marriage is material". The same case is also authority for the proposition that although section 80 of the Civil Code provides a means for judicial determination of void marriages, that does not undertake to establish an exclusive method of questioning the validity of the purported marriage. Says Justice Sloss: "The judgment merely declares an existing fact, viz., that the marriage is void, and that fact may be shown even though it may not have been so adjudicated."

▆ Upon the authority of the above-cited case we hold that the court in the instance before us for consideration, having before it facts showing the purported marriage did not come within the excepted classes of section 61 of the Civil Code, did not commit error in permitting the collateral attack upon the subsequent Steeger marriage. Its conclusion that the second marriage was void and illegal, that the purported marriage between the witness Steeger and appellant Steeger was in fact no marriage at all, that the witness and Clara Steeger were not husband and wife and that he therefore might testify against her unrestricted by the limitations of sections 1881 of the Code of Civil Procedure and 1322 of the Penal Code, followed inescapably. No error appears in the court's ruling. Incidentally in this connection, as pointed out by respondent, the fact that a second marriage has been contracted under the erroneous impression that the first marriage was void or had been annulled or dissolved is

not even a defense to a charge of bigamy. (*People* v. *Hartman,* 130 Cal. 487 [62 Pac. 823].)

■ Appellants also urge that because the witness Steeger was an accomplice his testimony was therefore subject to the limitation that it must be corroborated by other evidence tending to connect appellants with the commission of the offense. (Pen. Code, sec. 1111.) Disregarding his testimony, appellants argue, there was insufficient evidence to connect his codefendants with the crimes charged. This contention overlooks the testimony offered by the prosecution of the handwriting expert as to the altered document, and of appellants themselves when they appeared in the probate court in an effort to prove the forged instrument as Cheney's last will. Clearly, the connecting testimony, tending to inculpate appellants and pointing to their guilt, even if the testimony of the accomplice be disregarded, sufficiently meets the test which the law imposes. (*People* v. *Morton,* 139 Cal. 719 [73 Pac. 609].)

■ Much insistence is placed by appellants upon the refusal of the trial court to allow them to show that the witness Dabney had admitted at a preliminary hearing that she was guilty of the possession of narcotics. The court did permit proof that the witness was at the time of the within trial charged with a felony, to wit, possession of narcotics, but refused appellants' offer to show that she had been in court and admitted the charge. Such offered evidence is not in accordance with the method prescribed by the code for impeaching a witness.

■ The court also refused to allow appellants to place before the jury the fact that when the Dabney file from the district attorney's office was produced in court at the within trial on December 24, 1935, the jacket of said file contained a notation as follows: "January 15, 1936, on motion of district attorney, case is dismissed in the interest of justice". It is appellants' contention that this notation as to a matter to be done at a future date indicated unmistakably that the district attorney had agreed to dismiss the charges against Dabney at a later date provided the witness testified for the prosecution in the within will forgery case. The jurors in this action were apprised of the pendency of the felony charges against the witness, and the knowledge of that fact undoubtedly influenced them in considering the weight to

be given to her testimony. Even conceding, as argued by appellants, that it may have been proper to place before the jurors the additional fact that the witness had at a preliminary hearing admitted the truth of the charges against her, and conceding for the sake of argument that the notation upon the district attorney's file as to any future disposition of her case should have been admitted in evidence, the error, if any, in view of the facts actually placed before the jury, was inconsequential and could not have prejudicially affected the outcome of the case.

■ Appellants' final points have to do with the nature of the two charges in the indictment. Mrs. Glab was convicted of forgery and also of preparing false evidence. Appellant Steeger was acquitted of forgery and convicted of preparing false evidence. It is argued that the two charges grew out of the same circumstances, that they were part of the same transaction, and that therefore in effect there was but one crime committed. In the case of appellant Steeger it is argued that her acquittal on one count must automatically operate as an acquittal on the other. Conversely it is argued that in the case of appellant Glab (whose sentences on the two counts were pronounced to run consecutively) the court committed error because in fact only one offense was committed, and therefore the judgment upon the second count at least should be reversed. The answer to these contentions is contained in the two sections of the Penal Code, numbers 134 and 470, under which the indictment herein was framed. ■ Clearly, two separate offenses are set forth, and it is plain that each offense required proof of facts additional to those involved in the other. This is the law's test as to whether a single act or series of acts may constitute two separate offenses. (*In re O'Connor*, 80 Cal. App. 647 [252 Pac. 730].)

Discussion as to inconsistencies in the testimony of various witnesses and as to the weight or credibility to be accorded to the evidence is not pertinent where, as here, overwhelming evidence supports the verdict and judgment.

The judgment and order appealed from are affirmed.

Wood, J., and Crail, P. J., concurred.