[Crim. No. 2913.   Second Appellate District, Division One.—May 8, 1937.]

THE PEOPLE, Respondent, v. HENRY DAVIDIAN et al., Appellants.

Myer B. Marion for Appellants.

U. S. Webb, Attorney-General, Eugene M. Elson, Deputy Attorney-General, Buron Fitts, District Attorney, and Jere J. Sullivan and Herbert J. Scott, Deputies District Attorney, for Respondent.

YORK, J.—By an indictment returned by the grand jury, the defendants were charged with the crime of criminal conspiracy to violate the provisions of section 115 of the Penal Code, with two violations of said section 115, and with the crime of forgery. They were found guilty of the offenses charged and have appealed from the judgments of conviction, as well as from the order by which their motions for new trial and in arrest of judgment were denied. The defendants Mathson and Hagopian were granted probation, and on November 23, 1936, the appeal of defendant Hagopian was dismissed; as to the defendant Mathson, the judgment and order from which he appealed were affirmed upon motion duly made therefor, and as result the appeal of defendant Davidian alone remains to be determined by this court.

From the record before us it appears that Theopholus Davidian, appellant's father, died in Los Angeles County on the 29th day of May, 1935; that on the 12th day of June, 1935, an instrument purporting to be the last will and testament of said Theopholus Davidian, bearing date of January 18, 1935, was filed for probate with the county clerk of Los Angeles County by the defendant Mathson, who was one of the witnesses to the execution of the said purported will and who was named as executor therein. Appellant was the attorney for the proponent of this will, which was offered for and admitted to probate, but nothing more was done until the 6th day of March, 1936, when a second instrument purporting to be the last will and testament of the said Theopholus Davidian, bearing date of March 2, 1935, was offered for probate by the said defendant Mathson, who with defendant Hagopian was a witness to the execution of this second will and was named as executor therein. This latter will was offered through the office of R. M. Robertiello, an attorney at law.

Evidence was introduced at the trial to show that the signature of the testator to each of these wills was forged; that the defendant Mathson, who was the law clerk in the employ of appellant, offered these instruments for filing with the county clerk of Los Angeles County. There was evidence that appellant had guilty knowledge of the false nature of the wills and that he conspired with his co-defendants to procure the filing of the wills for probate.

Upon this appeal, appellant presents the following questions:

1. Is a will an instrument within the purview of section 115 of the Penal Code?

2. Can the crime of forgery be committed where the signature to a will is counterfeited and decedent dies without estate?

3. Is the substitution of an alternate juror for one of the original jurors, who becomes ill after the cause has been finally submitted to the original jurors and they have deliberated thereon, constitutional?

4. Assuming the provisions for alternate jurors after the final submission of the cause to be constitutional, where there are two alternate jurors who have been selected at the commencement of the trial, is the substitution of one of these alternates for an original juror who becomes sick, to be determined arbitrarily by the trial court or by lot?

5. Did the trial court err in permitting outsiders in the jury room?

Appellant also maintains that the court erred in denying his motions for dismissal, for new trial and in arrest of judgment.

The indictment in this case is foundationed upon section 115 of the Penal Code, which provides as follows: ''Every person who knowingly procures or offers any false or forged instrument to be filed, registered or recorded in any public office within this state, which instrument, if genuine, might be filed, registered or recorded under any law of this state or of the United States, is guilty of felony.''

■ In connection with his first point, appellant claims that a will is not such an instrument as is contemplated by said section 115, *supra.* With this we are not in accord. In the first place, section 4131 of the Political Code makes it the duty of the county recorder to record wills admitted to probate, and further, section 332 of the Probate Code provides: ''When the court admits a will to probate it must be recorded in the minutes by the clerk. . . . ''

It should also be noted that when a petition for the probate of a will is filed with the county clerk of Los Angeles County, the original will is filed at the same time, and at the time of the hearing of the petition the original will is produced by the clerk and presented to the court sitting in probate, in order

that its due execution and genuineness may be satisfactorily established.

▆ As to appellant's second point, the crime of forgery is complete when one either makes or passes a false instrument with intent to defraud (*People* v. *Whitaker*, 127 Cal. App. 370, 373 [15 Pac. (2d) 883], citing *People* v. *Lucas*, 67 Cal. App. 452 [227 Pac. 709]). We believe that it is immaterial whether decedent died with or without an estate, and as to this the record is in conflict; but the evidence shows that the decedent was the father of several children all of whom might have inherited his estate in equal parts had he died intestate. In the counterfeit will dated March 22, 1935, two children were cut off with a bequest of $1 each, while appellant was bequeathed $1,000 and another son made residuary legatee. Under these circumstances, it cannot well be said that there was no intent to defraud.

▆ Appellant next contends that the substitution of an alternate for an original juror after final submission of the cause to the jury is unconstitutional; or, assuming that the provisions of section 1089 of the Penal Code for selecting alternate jurors are constitutional, that the method of selection in this case was error.

It appears from the record that after the cause had been submitted to the jury and a period of some seventeen hours had elapsed during which time the jury was deliberating thereon without arriving at a verdict, although several ballots had been cast, one of the jurors became ill. Dr. Blank, the county jail physician, was called to examine her, to which no objection was made, and it was found that the particular juror was incapable of carrying on her duties as a juror; whereupon she was discharged by the court, and one Harvey B. Titcomb, who had previously been the first of two alternate jurors selected and accepted by all counsel and sworn in as an alternate juror, was again sworn and took the seat vacated by the discharged juror. The proceedings which took place with reference to the drawing of this alternate juror are as follows: "Friday, June 26, 1936 at 11:58 A. M., (Present: The Court, Mr. Scott, Mr. Hardy, Mr. Thompson and the three defendants) (Jury enters courtroom at 12 M.).

"The Court: Do you stipulate the jury is present and in their places, and the defendants are here? Mr. Hardy: So stipulated on behalf of the defendants. Mr. Scott: So stipu-

lated. The Court: Mr. Foreman, there has been reported to me by the bailiff who has the jury in charge that one of the members is sick. Is that correct? The Jury Foreman (Charles M. Stockwell): Yes, your Honor. The Court: It is further reported to me that one of the members, I think it is—who is it? The Foreman: I don't know of any other. Juror Mrs. Jensen: Mrs. Jensen. The Court: That she was sick all during the night and has been sick this morning. Is that right, Mrs. Jensen. Mrs. Jensen: Yes. The Court: Do you feel you are able to proceed further? Mrs. Jensen: No, I do not. I am awfully sorry about this. I just feel I cannot go on. The Court: You have been hysterical for—. Mrs. Jensen: Yes. The Court: —some time. Mrs. Jensen: I hope I haven't caused any inconvenience to the court. I just feel I cannot go on. The Court: You feel you cannot proceed? Mrs. Jensen: I do; and I am awfully sorry about it. The Court: Is that the concurrence of the other jurors? Some Jurors: Yes. The Court: Have counsel any stipulation? Mr. Thompson: We are agreed what the law is. We don't want to work a hardship on anybody. Yet we don't want to get anybody in a position where our three weeks' work is going to be for naught. Does your Honor feel it might be advisable to find out, prior to making any change in the jury, whether there is any possibility of agreement as it now stands? The Court: They have never indicated to me, nor am I going to ask them. They are still deliberating. Mr. Hardy: I think the responsibility is with the Court and is not a matter for counsel. The Court: Then you don't desire to enter into any stipulation? Mr. Thompson: No. I think that is your job, judge; not ours. The Court: Dr. Blank, you made an examination? Dr. Blank: Yes. The Court: In the presence of the Bailiff? Dr. Blank: Yes. The Court: Your opinion is what? Dr. Blank: My opinion is, I do not think this particular juror is capable of carrying on her duties at this time. The Court: Let the record show the Court finds, not only from the evidence here but from the observation of the juror, that she is sick and unable to proceed. This juror will be discharged. Alternate No. 1 will be placed in her place in the jury box, as Juror No. 3. Doctor, will you attend her? Quite apparent she needs attention. Swear the juror.

"(Thereupon Harvey B. Titcomb, who had previously been the first one to be selected, accepted by all counsel and sworn

in as an alternate juror, was now again sworn to try the cause, and took the seat just vacated by Mrs. Jensen, Juror No. 3.)

"The Court: Mr. Titcomb was empaneled as Alternate Juror No. 1. He has listened to the entire evidence in the court room and not associated with the jurors until now. All right. Anything further, gentlemen? That will be all, then. I will take a recess at this time; the jury is in charge of the Bailiff.

" (Thereupon the Jury, as now constituted, retired for further deliberation.)

"Friday, June 26, 1936, at 3:35 P. M.

" (The jury returns to Court room at 3:35 P. M. Present: The Court; Mr. Scott, Mr. Hardy and Mr. Thompson, and all three defendants.)

"The Court: Do you stipulate the jury is present and in their places and the defendants are here?

"Mr. Scott: The People so stipulate. Mr. Hardy: So stipulated. The Court: Including the alternate. Mr. Foreman, the Bailiff indicated to me you desire further instructions, or the jury desires further instructions and directions; is that correct? The Foreman: It is. The Court: In what particular? Mr. Thompson: Your Honor, prior to this, in order that our stipulation that the jury is present be not misunderstood at a later date, we will stipulate that the jury is present but we won't stipulate as to the correctness of the jury as now constituted. The Court: What do you mean by that? Mr. Thompson: We don't want to waive any irregularities that may have existed by the substitution of Mr. Titcomb as the alternate, but are stipulating that the jury is present. We don't know that any exists, but we don't want to be in a position of having waived it. The Court: You mean that the Court, having excused one juror by reason of sickness that that juror is not here; is that it? Mr. Thompson: We realize the Court conducted the proceedings and we are in the dark—we are in the dark as to the law now. We don't want to, by our stipulation— The Court: Let the record show the jury is present—twelve members in the box, including the alternate which the Court placed in the box. Mr. Hardy: We will stipulate to that. The Court: And the other alternate juror that was sworn in is in the court room and present but not with the twelve jurors? Mr.

Hardy: That is correct. Mr. Thompson: We stipulate to that.''

We feel that this objection,—if it can be so called or if it was well taken—which was made by Mr. Thompson, counsel for defendants, came too late and can avail appellant nothing upon this appeal.

█ The constitutionality of section 1089 of the Penal Code prior to its amendment in 1933, was before this court in *People* v. *Peete*, 54 Cal. App. 333 [202 Pac. 51]; and said section was there held to be constitutional. The words added to this section by the amendment of 1933 are contained in the following paragraph: ''*Drawing of alternate:* If at any time, whether before or after the final submission of the case to the jury, a juror die or become ill, so as to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate, who shall then take his place in the jury box, and be subject to the same rules and regulations as though he had been selected as one of the original jurors.''

As the names of the alternates were drawn they were designated as alternate No. 1 and alternate No. 2, instead of juror No. 13 and juror No. 14. The question apparently raised by appellant is that, because the court did not make another drawing *after* the original juror was discharged, appellant's constitutional rights were invaded. This would have no force unless the section uses the word ''draw'' in the sense that it is mandatory upon the court to draw the alternate juror again after the discharge of the original juror. It is our belief that the section is complied with when, as in this case, the court selects the first one of two alternates who were drawn *before* the original juror was discharged.

█ If there was any irregularity in the selection of the alternate juror, it does not appear to have resulted in any prejudice to appellant, nor to have deprived him of any substantial right. It is well settled in this state that under such circumstances, and in the absence of an adequate showing of prejudice, the judgment will not be disturbed on appeal. No such showing was made. Mere unprejudicial irregularities do not justify a reversal.

█ The affidavit of the alternate juror No. 2 has no value whatever, as no one knows, even affiant, how she might have

voted, if she had had the benefit of consultation with the other jurors. Therefore, at most, her affidavit, if entitled to any consideration, which is not to be understood as conceded, was but an opinion.

After a careful examination of the record, we are of the opinion that appellant had a fair and impartial trial, which is all that is guaranteed by the Constitution of this state. Further, we believe that the evidence amply sustains the judgment, and that there was no error in the denial of the motion for new trial or the motion in arrest of judgment.

The facts and circumstances do not show prejudicial error in that the doctor and nurse were present in the anteroom with the juror, who was excused. She did not thereafter act with the jury. The decision in the case of *People* v. *Bruneman*, 4 Cal. App. (2d) 75 [40 Pac. (2d) 891], as to disqualification of the jury by reason of the presence of outsiders is not in point here.

The judgment and the order appealed from are affirmed.

Houser, P. J., and Doran, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 3, 1937.