[Crim. No. 4854. In Bank. Feb. 28, 1949.]

In re HARRY HOROWITZ, on Habeas Corpus.

[L. A. No. 20199. In Bank. Feb. 28, 1949.]

THE PEOPLE, Respondent, v. HARRY HOROWITZ, Appellant.

Morris Lavine, under appointment by the Supreme Court, for Petitioner and Appellant.

Fred N. Howser, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

SCHAUER, J.—This is an application for the writ of habeas corpus (Crim. 4854), with which has been consolidated an appeal from an order denying a petition for writ of error *coram nobis* (L. A. 20199). In these proceedings Harry Horo-

witz (hereinafter sometimes called petitioner) attacks the validity of four judgments of conviction by virtue of which he is confined in the state prison at San Quentin. For the reasons hereinafter stated, we have concluded that this court is without jurisdiction to entertain the *coram nobis* appeal and, further, that petitioner has not shown, in the habeas corpus proceeding, that he is unlawfully imprisoned.

### Factual Background

The judgments of conviction which petitioner attacks are of forging a will (Pen. Code, § 470), causing to be filed a false will (Pen. Code, § 115), offering in evidence a false will (Pen. Code, § 132), and preparing a false will with intent to allow it to be produced for a fraudulent purpose in a probate proceeding (Pen. Code, § 134). According to evidence adduced at the trial and believed by the jury, petitioner wrote the will on a sheet of paper which was blank except for the genuine signature of his adoptive mother and procured the signatures of two women (Emma Cordova and Maria Matus) as purported witnesses. Petitioner's adoptive mother, Esther Horowitz, died on December 31, 1942, at the sanitarium of Mrs. Irene Drucker. Petitioner instituted proceedings for probate of the forged will. Morris Horowitz, husband of Esther, contested the will and probate was denied. In accord with the suggestion of the probate judge, the criminal prosecution of petitioner was then instituted.

### Previous Attacks Upon the Judgments

The judgments of conviction growing out of such prosecution were affirmed by the District Court of Appeal (*People* v. *Horowitz* (1945), 70 Cal.App.2d 675 [161 P.2d 833]) and petitions of appellant Horowitz for rehearing and for hearing by the Supreme Court were denied. Shortly after the going down of the remittitur (Oct., 1945) Horowitz petitioned the Los Angeles Superior Court for the writ of habeas corpus and the writ of error *coram nobis*. The superior court issued the writ of habeas corpus and, after hearing (Jan., 1946), discharged it and denied the petition for *coram nobis*. Horowitz appealed from the order of denial but the appeal was subsequently dismissed. (Petitioner states that he failed to prosecute the appeal because it came before the same court which had affirmed the judgments of conviction and he felt that the justices of that court were prejudiced against him.) Another petition for habeas corpus was denied by this court without

opinion (Sept. 19, 1946). Each of these previous attacks upon the judgments was based primarily, as are the proceedings now before us, upon the contention that the prosecution used false and perjured evidence, with knowledge of its character, to procure petitioner's conviction. (See *Mooney* v. *Holohan* (1935), 294 U.S. 103 [55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406]; *In re Mooney* (1937), 10 Cal.2d 1, 15 [73 P.2d 554].)

### The Coram Nobis Appeal

■ An order denying a petition for the writ of error *coram nobis* is made appealable by section 1237 of the Penal Code ("An appeal may be taken by the defendant ... 3. From any order made after judgment, affecting the substantial rights of the party"). (*People* v. *Perez* (1908), 9 Cal.App. 265, 266 [98 P. 870], followed in *People* v. *Schwarz* (1927), 201 Cal. 309, 312 [257 P. 71]; *People* v. *Gilbert* (1944), 25 Cal.2d 422, 444 [154 P.2d 657] [appeal under comparable section 1238 which provides that the People may appeal "5. From an order made after judgment, affecting the substantial rights of the people"].) ■ An appeal in such cases is, therefore, governed by the procedural rules for "Appeals in Criminal Cases" (Rules on Appeal, pt. V, rule 31). Petitioner's notice of appeal was not filed within 10 days after the making of the order appealed from as required by rule 31. In both criminal and civil cases, "the time requirements for the taking of an appeal are mandatory, and . . . the appellate courts are without jurisdiction to consider an appeal which has been taken subsequently to the expiration of the statutory period." (*People* v. *Slobodion* (1947), 30 Cal.2d 362, 365 [181 P.2d 868]; *People* v. *Lewis* (1933), 219 Cal. 410, 413-414 [27 P.2d 73], and cases there cited.) Therefore, this court "has no discretion but must dismiss the appeal of its own motion even if no objection is made." (*Estate of Hanley* (1943), 23 Cal.2d 120, 123 [142 P.2d 423], and cases there cited.) However, petitioner's contentions sought to be raised on his *coram nobis* appeal have been reiterated by him in the habeas corpus proceeding. The grounds upon which a court may grant relief by habeas corpus are broader than those available for issuance of the writ *coram nobis* (*In re Lindley* (1947), 29 Cal.2d 709, 724-725 [177 P.2d 918]), and the contentions sought to be advanced by petitioner are more appropriately urged, and will be considered, upon his application for habeas corpus.

## Petitioner's Contention That the Prosecution
## Knowingly Used False Evidence

Petitioner alleges that the prosecution knowingly used perjured testimony of Mrs. Irene Drucker to the following effect: On or about January 6, 1943, in the evening, petitioner called upon Mrs. Drucker and demanded possession of articles of personal property which had belonged to his mother and which were in Mrs. Drucker's possession. For the purpose of substantiating his claim he produced a sheet of paper which was blank except that it bore the signature of Esther Horowitz. Mrs. Drucker refused to deliver the property to petitioner. Later petitioner returned to Mrs. Drucker and again displayed the paper; on this occasion it bore the substance of the forged will and the word "Witnesses," but no signature of any attesting witness.

The questions whether this testimony was wilfully false as to material matters and whether the prosecution used such testimony with knowledge that it was perjured, were tried out before the Honorable William R. McKay on the above mentioned previous habeas corpus and *coram nobis* proceedings in the superior court in January, 1946, and were resolved adversely to petitioner. In his present petition for habeas corpus petitioner states in detail his reasons for his continued insistence that they be tried out again. Such reasons, with explanations of their want of merit, are as follows:

(1.) Attorney Irving Buchalter, who handled the probate proceedings for petitioner, was a witness (called by both the People and the defendant) at the criminal trial. He testified *for the prosecution* that petitioner had shown him the will and other documents on January 5, 1943, and had left them in Buchalter's possession on the day of January 6, 1943; i. e., before Mrs. Drucker, according to her testimony, saw the paper bearing only the signature of petitioner's mother. The prosecuting attorney recognized and called the jury's attention to this conflict in the evidence. In oral argument he told the jury, "Now, of course, it is obvious to you ladies and gentlemen that if Mr. Buchalter saw the document on January 5 and at that time it contained the names of Emma Cordova and Maria Matus, that Mrs. Drucker could not have seen it on the 6th, as she testified that she did see it on or about the 6th, because at that time the will was in the possession of Mr. Buchalter." The fact that there was a conflict between the testimonies of two prosecution witnesses may indicate that one was mistaken or even lying but does not show that the

prosecuting attorney knew which one was mistaken or falsifying or that he deliberately sought to convict the defendant by the use of perjured testimony. Indeed, in the absence of such knowledge on his part, or means of acquiring that knowledge, it is difficult to imagine how he could act more fairly, in the discharge of his duty, than to produce both witnesses and let the jury decide the fact.

(2.) Upon the trial of the will contest Mrs. Drucker testified for contestant Morris Horowitz. She did not then testify as to having seen the forged will in various stages of preparation. After probate of the will had been denied and petitioner had moved for a new trial of the will contest Mrs. Drucker made an affidavit in opposition to the motion for new trial, in which she stated that she had seen the will without the signatures of subscribing witnesses. That her mention of this matter was belated does not, as petitioner argues, necessarily establish that she fabricated her testimony. The effect of such belated mention upon her credibility, in the light of her earlier testimony, was for the jury to determine upon the criminal trial of petitioner and the question was properly presented to that fact-finding body. The effort of petitioner's counsel to impeach the testimony of Mrs. Drucker in this respect is shown by the following excerpt from the transcript:

"Q. Did you make an affidavit in which you swore that you had never told any one prior to the 24th day of September, 1943 [i. e., after probate of the will was denied], that the two signatures that you claim were not on the document you saw were not there? A. I did. . . .

"Q. Did you swear also that you had not mentioned this fact, such fact to the attorneys for the contestant . . . before or at the time of the trial of the contest? A. That is right."

(3.) Petitioner alleges that at the time when, according to Mrs. Drucker's testimony, she saw and identified the paper upon which the will was forged, she could not read; that she then "did not even know the letters of the English alphabet." That there was a question as to the extent of Mrs. Drucker's literacy was known to petitioner before the criminal trial. Such question was properly gone into on cross-examination in an effort to cast doubt upon her credibility and it was brought out that her ability to read was, at the most, slight. This fact, although it was material for the consideration of the triers of fact in determining the weight of her testimony, does not necessarily establish, and certainly does not charge the prosecutor with knowledge of, deliberate falsification on her part.

(4.) Petitioner alleges that he informed the district attorney of the asserted perjury "before, during, and subsequent to petitioner's conviction," and that the district attorney refused to investigate the charge. The mere fact that the prosecuting attorney knew of the above matters reflecting upon Mrs. Drucker's credibility, and of petitioner's claim, did not require him to accept petitioner's charge that she was wilfully falsifying. The prosecution did not have to refrain from calling Mrs. Drucker and to rest its case, as to this issue, solely upon the testimony of handwriting experts simply because of petitioner's accusations. It could and did decide that complete investigation of, and fair presentation of evidence concerning, the asserted crimes of petitioner required the production of the two witnesses (Mrs. Drucker and Mr. Buchalter) whose testimonies were in conflict, and the frank submission to the jury of the question of which witness should be believed. It is possible, of course, that either or both witnesses could have been innocently mistaken as to various details of recollection.

Petitioner charges, also, that testimony of handwriting experts, known by the prosecution to be false, was introduced against him and that expert testimony favorable to petitioner was suppressed by the prosecution. In elaborating these charges petitioner makes it apparent that they are without substantial support. The fact that experts disagree does not necessarily reflect upon the honesty of their opinions. The fact that no chemical tests of ink used on the disputed document were made by the prosecution witnesses does not, in the light of any other circumstance shown, indicate that the prosecution anticipated, or should have anticipated, that the results of such tests, if made, would be unfavorable or at all enlightening; accordingly, the failure to have such tests made does not establish that the prosecution "suppressed" evidence which, if adduced, would have favored petitioner. "There is no compulsion on the prosecution to call any particular witness or to make any particular tests so long as there is fairly presented to the court the material evidence bearing upon the charge for which the defendant is on trial. [Citations.]" (*People* v. *Tuthill* (1947), 31 Cal.2d 92, 98 [187 P.2d 16].) The fact that particular expressions of a witness, taken out of context, seem inconsistent with other statements of the witness does not show that he is lying. Yet, search of the entire record discloses, it appears to be upon these considerations that petitioner relies as basis for his grave charges

that the People, intent upon procuring his conviction, deliberately used false testimony unfavorable to petitioner and suppressed true evidence favorable to him.

Petitioner complains that before the trial of the will contest he informed a deputy district attorney that the will had been mutilated by "spoliation of the first down-stroke in the letter H in the name of the subscribing testatrix"; that the district attorney refused to investigate this charge; and that the People were guilty of "fraud" in subsequently prosecuting petitioner on the basis of this will. The factual situation as to the asserted mutilation of the will was as follows: After it was filed for probate it was removed from the files by counsel for contestant Morris Horowitz and examined by handwriting experts employed by him. Petitioner suggests that it was on this occasion that the will was mutilated. Also, after the will was filed for probate petitioner himself obtained possession of it. It was the theory of the prosecution that petitioner then mutilated the document. He was tried and acquitted on this charge. (*People* v. *Horowitz* (1945), *supra,* 70 Cal.App.2d 675, 684.) It was apparent that the district attorney did investigate the claimed mutilation of the will. The facts that this investigation was not initiated immediately upon petitioner's suggestion, but rather after trial of the will contest at the suggestion of the probate judge, that such investigation led the district attorney to the conclusion that petitioner himself should be charged with mutilation, and that upon the trial he was acquitted of that charge, do not, in view of the other circumstances shown, sustain a charge of "fraud."

### *Petitioner's Contention That He is Being Punished Four Times for One Act*

Petitioner complains of the order, made by the trial court which sentenced him, that the sentences run consecutively. He urges that such order is in violation of the provision of section 654 of the Penal Code that "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . ."*

---

*This contention was first made to the trial court at the time it ordered that the sentences run consecutively. It was again made by defendant in his closing brief on appeal to the District Court of Appeal. That court mistakenly stated in its opinion (p. 684 of 70 Cal.App.2d) that the four sentences ran concurrently. The contention was reiterated in the petition for rehearing and in the petition for hearing by this court.

Petitioner was charged with and found guilty of violating the following four sections of the Penal Code:

Penal Code, section 470: "Every person who, with intent to defraud, . . . falsely makes . . . any . . . will, . . . or utters, publishes, passes, or attempts to pass, as true and genuine, . . . [the forged will], knowing the same to be false . . ., with intent to prejudice, damage, or defraud any person . . . is guilty of forgery."

Penal Code, section 115: "Every person who knowingly procures or offers any false or forged instrument to be filed . . . in any public office within this state, which instrument, if genuine, might be filed . . . under any law of this state . . . is guilty of felony." (A will is an instrument within the contemplation of section 115. *People* v. *Davidian* (1937), 20 Cal.App.2d 720, 723 [67 P.2d 1085].)

Penal Code, section 132: "Every person who upon any trial . . . offers in evidence as genuine or true, any . . . paper . . ., knowing the same to have been forged or fraudulently altered or antedated, is guilty of felony."

Penal Code, section 134: "Every person guilty of preparing any false or antedated . . . paper . . . with intent to produce it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial . . . is guilty of felony."

Petitioner relies upon cases which hold that one who, with reference to the same instrument, is guilty of more than one of the acts denounced by section 470 (e. g., making and uttering a false instrument), is guilty of but one forgery; "notwithstanding each act may by itself constitute the offense, all of them together do no more, and likewise constitute but one and the same offense." (*People* v. *Frank* (1865), 28 Cal. 507, 513; in accord are *People* v. *Shotwell* (1865), 27 Cal 394, 400-401; *People* v. *Harrold* (1890), 84 Cal. 567, 569 [24 P. 106]; *People* v. *Ley Shon* (1895), 108 Cal. 440, 442 [41 P. 480]; *People* v. *Driggs* (1909), 12 Cal.App. 240, 242 [108 P. 62].) These cases, however, are clearly distinguishable, for in each of them the above holding, or its substance, was made in answer to the contention that the indictment or information charged more than one offense (i. e., more than one violation of section 470), a mode of pleading formerly not permitted under section 954 of the Penal Code. In none of such cases did the indictment or the information purport to charge, in addition to the offense denounced by section 470 of the Penal Code, another offense disparately defined and de-

nounced by another code section. (See *People* v. *Driggs* (1909), *supra.*) When (after section 954 was amended to permit such pleading) an indictment charged, in separate counts, violations of section 134 and section 470 of the Penal Code, it was held that "Clearly, two separate offenses are set forth, and it is plain that each offense required proof of facts additional to those involved in the other"; the court rejected defendant's contention that there was but one offense and that therefore the order that the two sentences run consecutively was erroneous. (*People* v. *Glab* (1936), 13 Cal.App. 2d 528, 537 [57 P.2d 588], where defendant falsely made a will and offered it for probate.)

In the present case, as previously indicated, the indictment alleged and the jury found petitioner guilty of four instances of criminal conduct, and the record of the trial (which is filed with us) shows evidence sufficient to support the jury's determination that petitioner committed four separate offenses upon four separate occasions, as follows:

1. Petitioner was charged with and found guilty of a violation of section 470 of the Penal Code, committed as follows: "On or about" December 15, 1942, in Los Angeles, he "did . . . wilfully, unlawfully, fraudulently and feloniously make, forge, alter and counterfeit a certain will [set out in words and figures] and did then and there utter, publish and pass the same, knowing said will to be false, forged and counterfeited," with intent to defraud Morris Horowitz. It appears from the record, and we must assume that the jury believed, that at some time shortly after January 6, 1943, in the course of his efforts to obtain from Mrs. Drucker the personal property which had been his mother's, petitioner exhibited to Mrs. Drucker the paper bearing the forged will and his mother's signature. This display of the instrument for the purpose of obtaining the property constituted "uttering" in violation of section 470 as charged in count I of the indictment. (See 12 Cal.Jur., Forgery, § 8.) The discrepancy in dates ("on or about" December 15, 1942, according to the indictment; shortly after January 6, 1943, according to the evidence) can furnish no ground for relief on habeas corpus. Petitioner does not claim, nor does the record show, that the conviction of offense 1 was based, not upon the just described instance of criminal conduct, but upon one of the hereinafter described instances of criminal conduct numbered 2, 3 and 4.

2. It was alleged, the evidence sufficiently showed, and the jury found that on January 11, 1943, petitioner violated

section 115 of the Penal Code by filing the will for probate.

3. It was alleged, the evidence sufficiently showed, and the jury found that on July 26, 1943, petitioner violated section 132 of the Penal Code by offering the forged will in evidence in the probate proceeding.

4. Petitioner was charged with and found guilty of a violation of section 134 of the Penal Code, committed as follows: "on or about" January 9, 1943, petitioner "did wilfully, unlawfully and feloniously and knowingly prepare a false and antedated instrument in writing, to wit, a purported will as being the genuine will of Esther Horowitz, bearing a date of the 8th day of December, 1942, with the intent to cheat and defraud . . . Morris Horowitz," and petitioner on January 11, 1943, "cause[d] the said false and antedated instrument to be filed with the County Clerk . . . for the purpose aforesaid of cheating and defrauding . . . Morris Horowitz." The evidence supports the view that petitioner prepared the will "about" January 9 as charged; that its actual preparation may have been done on several different days is immaterial. No claim was made on appeal to the District Court of Appeal, on petition for rehearing in that court or on petition for hearing in this court, nor does petitioner now contend, that the conviction of offense 4 was founded on the filing of the will for probate, the act constituting offense 2. As to offense 4 the jury were instructed that "Every person who prepares any false . . . instrument in writing . . . with intent to produce it or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial . . . is guilty of a felony. . . . Violation of Section 134 of the Penal Code . . . requires, amongst other things, the specific intent to produce the false instrument therein referred to or allow it to be produced for any fraudulent or deceitful purpose upon any trial or proceeding. . . . Therefore, before you may find the defendant guilty of the offense therein alleged, if you find that it was committed, you must further find from the evidence and beyond a reasonable doubt that at the time of the commission of said offense the defendant . . . had the specific intent to produce the alleged false document or allow it to be produced for a fraudulent and deceitful purpose upon a proceeding . . ." Following these instructions the jury, to convict of offense 4, must have agreed that petitioner prepared the will with intent to produce it in the probate proceeding; they cannot be held to have been misled into believing that he could be convicted of

offense 4 if they agreed merely that he *filed* the will for probate, the act underlying conviction of offense 2.

It is thus apparent that on the showing made, and under established law, we must accept the contention of the respondent that petitioner is being punished for four separate acts and that the consecutive running of the sentences does not constitute punishment of one act more than once. Accordingly, since the question is not presented on the record before us, it is unnecessary to decide whether habeas corpus is available to relieve one whose sentences are ordered to run consecutively in violation of section 654 of the Penal Code.

### *Attack Upon Determination of Prior Conviction of Felony*

 Petitioner complains of the determination, made at the time of his conviction in California, that in 1926 in Illinois he was convicted of four robberies, felonies, the sentences to run concurrently, and that he served a term of imprisonment therefor in the state prison. This contention is relevant because "for a person previously convicted of a felony either in this State or elsewhere" the minimum term of imprisonment is five years (Pen. Code, § 3024, para. (c)), whereas in the absence of a determination of previous conviction of felony petitioner's minimum term of imprisonment would be two and one-half years (Pen. Code, § 18a [six months minimum, applicable to each of the three consecutive sentences for violations of sections 134, 115 and 132]; Pen. Code, § 473 [one year minimum, applicable to the sentence for forgery].) Petitioner avers that he was not a felon but a juvenile delinquent because he was only 15 years of age at the time of such prior conviction. However, he was sentenced to and confined in the state prison at Joliet, Illinois. The courts of this state cannot consider his argument that he should not have been sentenced to state prison for the 1926 offenses. (See *In re Wolfson* (1947), 30 Cal.2d 20, 31 [180 P.2d 326] ["absurd consequences would result if the courts of this state could take evidence to prove, and upon that evidence adjudicate for themselves, that a defendant was not guilty of a crime with which he had been charged, for which he had been tried or to which he had pleaded guilty, and of which he had been convicted in another state"].)

### *Other Contentions*

 Petitioner has requested that impartial experts be appointed by this court to examine the will. Such examina-

tion, he says, will reveal its genuineness. But that question was resolved against petitioner on the trial of the criminal charges and cannot be reopened in this proceeding.

Petitioner undoubtedly has established that at the trial there were disputed issues of fact and grave conflicts in the evidence. But the existence of such issues and conflicts at the trial, or the discovery of new evidence pertinent to them, presents no ground for intervention by us on habeas corpus. Even if petitioner's cause were presently before us on appeal from the judgments of conviction, the trial court's factual determinations, on such a record, would be conclusive. Under our system of law the weight of the evidence is primarily for the jury; it then may be reviewed by the trial judge and a new trial granted if in his discretion it appears that the weight of the evidence, despite substantial conflict, does not sustain the jury's finding. But on appeal, if there be substantial conflict, the determinations of jury and trial judge must be accepted as final (*People* v. *Tom Woo* (1919), 181 Cal 315, 326 [184 P. 389]; *People* v. *Green* (1939), 13 Cal.2d 37, 42 [87 P.2d 821]) and on habeas corpus, wherein the attack is collateral, the sphere of inquiry and bases of action are still more limited (*In re Byrnes* (1945), 26 Cal.2d 824, 827 [161 P.2d 376]; *In re McVickers* (1946), 29 Cal.2d 264, 273 [176 P. 2d 40]). If at the end of court procedures there is claimed to persist a miscarriage of justice, despite all the precautions of the law to the contrary, the ultimate remedy rests in an appeal to the governor for a pardon. (Cal. Const., art. VII, § 1; *In re Lindley* (1947), 29 Cal.2d 709, 728 [177 P.2d 918].)

Other contentions of petitioner need not be set out at length. They concern matters which should not be raised on habeas corpus and many of them were presented to, and correctly disposed of by, the District Court of Appeal upon the appeal from the judgments of conviction.

Furthermore, certain grounds of the petition were presented by the previous application to this court for habeas corpus, and it appears that all grounds now urged were then known to petitioner. It is the policy of this court to deny an application for habeas corpus which is based upon grounds urged in a prior petition which has been denied, where there is shown no change in the facts or the law substantially affecting the rights of the petitioner. (*In re Miller* (1941), 17 Cal.2d 734, 735 [112 P.2d 10]; *In re De La Roi* (1946), 28 Cal.2d 264, 275 [169 P.2d 363].) And as to the presentation of new grounds based on matters known to the petitioner at

the time of previous attacks upon the judgment, in *In re Drew* (1922), 188 Cal. 717, 722 [207 P. 249], it was pointed out that the applicant for habeas corpus "not only had his day in court to attack the validity of this judgment, but . . . had several such days, on each of which he could have urged this objection, but did not do so"; it was held that "The petitioner cannot be allowed to present his reasons against the validity of the judgment against him piecemeal by successive proceedings for the same general purpose."

For the reasons above stated the appeal in L.A. 20199 (*coram nobis*) is dismissed; the "Motion for Appointment of Experts by Court" is denied; the writ heretofore issued in Crim. 4854 (habeas corpus) is discharged; and petitioner is remanded to custody.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I concur in the conclusions reached in the majority opinion and generally in the reasons stated therein for such conclusions, but I do not desire to be understood as giving approval to the rules announced in the majority opinions of this court in *People* v. *Slobodion*, 30 Cal.2d 362 [181 P.2d 868] and *Estate of Hanley*, 23 Cal. 2d 120 [142 P.2d 423], as I do not consider the rules announced in these opinions to be good law and I am hopeful that the time will come when the majority of this court will so declare.

EDMONDS, J.—The order dismissing the appeal from the order denying Horowitz relief by way of a writ of error *coram nobis* necessarily is based upon the conclusion recently stated by a majority of the court that such an application "must be regarded as part of the proceedings in the criminal case . . ." (*In re Paiva*, 31 Cal.2d 503, 510 [190 P.2d 604].) This was a startling and wholly illogical departure from the rule long followed in California and expressly recognized by Mr. Justice Schauer in the same opinion: "That the writ, or the proceeding for it, has been traditionally regarded as civil cannot be disputed." Yet, notwithstanding the traditional classification of the remedy, it was decided that "an order made in a proceeding in the nature of a writ coram nobis is an order in the original case. . ." although none of the cases cited immediately following such characterization of it so hold. On the contrary, in previous consideration of the remedy of *coram*

*nobis,* it was said: "This is a distinct proceeding and has no connection with any ruling made by the court during trial or any order since made by the court. . . . The record in this case . . . was not vulnerable to the collateral attack made upon it." (*People* v. *Superior Court,* 4 Cal.2d 136, 151 [47 P.2d 724].)

For the reasons, which I stated more fully in the Paiva case (31 Cal.2d at p. 511), in my opinion the notice given by Horowitz of an appeal from the order denying relief to him was timely filed and the record should be reviewed upon the merits. As to the issues presented in the habeas corpus proceeding and the motion in connection therewith, I concur in the judgment.