### David Merritt v. The State.

No. 14220.   Delivered May 20, 1931.
Rehearing Denied June 24, 1931.

The opinion states the case.

*O'Brien Stevens,* Criminal District Attorney of Houston, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The conviction was for theft; punishment, two years in the penitentiary.

The only bill of exception is a complaint that the court refused to instruct the jury to acquit appellant for want of sufficient testimony to support the conviction.

The appellant, David Merritt, and Curtis Stevens and Maurice Owens, were jointly indicted for the theft of an automobile. The other two defendants not appearing, appellant alone was put upon trial.

The following evidence was offered by the state:

Lloyd Gano testified that he was night manager of the Esperson Garage; that he was such manager on the 26th day of July, 1930; that as night manager of the garage, he had the care, custody and control of the automobiles that are placed in the garage and that are in the garage;

that on the 26th day of July, 1930, there was a Chrysler Coupe in the Esperson Garage from Fort Sill, Oklahoma; that he had the care and control of said car; that it was placed in said garage to be greased; that the car was not inside the garage but was on their wash rack just across the street; that the car was stolen or taken from there about 12:30 at night; that it was about eight hours before it was recovered; that the car was brought back to the garage by their mechanic; that it was the same car that was stolen about eight hours prior to that time. He further testified that the car stolen was owned by an army officer from Fort Sill, Oklahoma, who got the car after it was brought back. He testified that he did not give the appellant nor anyone else permission to take the car off; that it was in Harris county, Texas. He testified further that the wash rack was a part of the Esperson Garage and that he was in charge of the wash rack at night.

Tom Ballard testified as a witness on behalf of the state. He testified that he was a deputy sheriff; that he lived outside of the city limits about seven and one-half miles out on the West Montgomery Road, or the Yale Street road; that he knew the appellant, David Merritt; that he saw him in the early morning on July 26th; that he recovered the Chrysler automobile with a United States red and white army license on it; that he first saw the appellant at work stripping the car; that the car was about a mile west of the West Montgomery Road in a pine thicket; that there were no houses immediately close around where the Chrysler coupe was; that when he saw the appellant, it was between seven and seventy-thirty in the morning; that there were two other boys with the appellant; that when he saw the appellant, they were taking off the radiator; that some of the other parts of the automobile had been taken off; that they had three tires, the generator and horn loaded into a car when he walked upon them; that the appellant and the others were engaged in taking the radiator off; that he arrested them and brought them to jail and then went back with the mechanic to show where the car was and that they brought it on into the Esperson Garage. He testified that his son, Rufus Ballard, and a negro named Eddie Robinson were with him; that he was notified about the car by the said Eddie Robinson, who lived in one of the nearest houses to the place where the car was being stripped. He testified that the appellant's car was parked right behind the car that was being stripped. He further testified that the appellant had grease off of the car on his hands; that he had his sleeves unbuttoned and turned up; that there was a trunk on the back of the army officer's car and it had been broken open.

Eddie Robinson testified substantially as follows: That he knew Mr. Ballard when he saw him; that he lived about a mile from him; that on the morning of the 26th of July, about six-thirty he was standing on his porch; that he saw two cars pass and that they went right on to the

thicket; that he walked on across the thicket; that he walked within about fifty feet of them; that one car was right by the side of the other and that there were three men with the two cars; that he did not know who they were, but he recognized one of them now as being the appellant; that he saw them wrecking the car, but that they did not see him; that they were taking the tires off, three of them; that when he said them, he meant all three of them; that the appellant was one of them who was taking the tires off the Chrysler coupe; that he went and told Mr. Ballard about it; that Mr. Ballard, his son and the witness came to the thicket, Mr. Ballard driving his car; that they drove up within a quarter of a mile of the thicket, then got out and walked; that when they got there, all three of the men were standing at the radiator and appeared to be taking the radiator off; that he saw the radiator after that and it was loosened and leaning over; that they had the hood off of the car; that the tires, generator and horn had been taken off of the car and were in the back of the other car, which the evidence showed to belong to the appellant.

Appellant offered no explanation of his connection with the car alleged to have been stolen at the time of his arrest.

The appellant as a witness on the stand testified that he was working on the 26th day of July; that he was working in the House Lease in Humble and was assisting in drilling a well for said company; that he laid off on the night of July 26th; that his fiancee had a birthday and that was the occasion of his laying off; that he and his fiancee had supper and rode around until close to midnight and then went back to her house off of the Yale Street road; that he got up the next morning about six-thirty; that he went out and started to fix his car and found that the muffler was off of it; that he fixed his car and had not washed up; that in the meantime two boys drove up in a Chrysler coupe and told him that they wanted him to drive them to a filling station because they did not have much gas in the car; that they just wanted him to go along to see that they got there; that they wanted to get some things at the place where they stayed that night and that they wanted to drive up here first; that they drove off the Yale Street road about a mile and a half and drove into a pine thicket and stopped; that the boy who was with him in appellant's car told him to drive up by the side of the other car, which he did and they jumped out, took the spare off of their car, the tools out of it and jacked up the rear end, took the two casings off and started opening up his rumble seat and threw them in there and started to raise up the hood of the car; that he did not know what to do, so he got out and asked them what they meant and they said, "We just want you to haul this stuff into town for us"; that one of the boys mentioned a firearm that was in the coupe and that he did not want to start any trouble with him and that he decided to see about it when he got to the filling

station and about that time Mr. Ballard came up and arrested them; that he had his mother's car; that he did not want to touch any part of that car at all; that he did not know the boys; that it was the first time he had ever seen them; that one of them told him that it was his father's car; that he was afraid and frightened when the other boy mentioned the firearm that was in the coupe.

The witness Albert Cougot testified that the appellant was working on his car while he was cooking breakfast and saw another car drive up and the two men in said car talked to appellant and that then they all left and appellant told him that he would be back and take him to work; that they drove off in both cars; that the appellant was working on the muffler of his car when they came up.

Two other witnesses, Juanita Brewer and Annie Lee Hirsch, testified that the appellant was with them during the first part of the night; that it was about midnight when they got home and that appellant went to bed, and that they saw him the next morning about six-thirty. One of them testified that when she saw him, he got his cap and went out.

It is admitted by the state in the statement of facts that Curtis Stevens and Maurice Owens, charged jointly with the appellant, David Merritt, were under bond to appear and stand trial on the 25th day of September, 1930, but did not appear and their bonds were forfeited and that subpoenas were issued on this date for said defendants by the appellant, David Merritt.

We are unable to reach the conclusion that the evidence is insufficient to support the conviction.

. The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant again challenges the sufficiency of the testimony. The jury are not bound to accept all or any of the testimony of the accused, and ordinarily where the testimony for the state, if accepted by the jury, makes out a case of violating the law involved in the prosecution, this court will not disturb the judgment.

Applying this rule, it is observed that the state's testimony fully shows appellant and two other boys in possession of an automobile which had been stolen just a few hours, or possibly minutes, before. All three of said parties appeared to have been engaged in the work of stripping the car, many of the movable parts of which had already been detached and placed in appellant's car, which was the only other car present. His story that he was induced by two strangers to go with them and assist

them and let them use his car in such enterprise, was so improbable that it could hardly be expected that the jury would believe it. We think the testimony entirely sufficient.

The motion for rehearing will be overruled.

*Overruled.*