[Civ. No. 6394. Third Appellate District.—May 6, 1940.]

WILLIAM HUNSAKER BRILL, Respondent, v. NANCY PIERSON BROOKS MACY BRILL, Appellant.

S. S. Hahn and W. O. Graf for Appellant.

Daniel M. Hunsaker for Respondent.

PULLEN, P. J.—This is an appeal from a judgment of annulment of marriage.

The purported marriage between the parties hereto was annulled upon the ground that at the time of such marriage appellant had a former husband living from whom she was not divorced. From that order this appeal is taken.

In 1928, appellant was a resident of New York. In 1928 she married George H. Macy, and both resided in New York. On June 4, 1934, appellant commenced an action against Macy in New York from which it appeared that in 1930 she had obtained a decree of separation from Macy wherein he was ordered to pay her $15 a week for support and maintenance; she also set forth that during all of the times therein referred to she had continuously resided in the city of New York, and that Macy had brought an action in Connecticut against her for divorce on the ground of desertion; and prayed for an injunction against Macy restraining him from prosecuting such action. An order to show cause was issued, and according to the records, is still pending.

On October 1, 1934, Macy and appellant entered into a contract wherein Macy agreed to pay her a lump sum in lieu of support and maintenance as prescribed in the decree.

We next find appellant in Reno, where she arrived October 5, 1934. She was met at the depot by an attorney, whom she had employed to obtain a divorce for her,—having telegraphed him before she left New York. She immediately

rented an apartment in Reno, and on November 21st, filed her action for divorce upon the ground of extreme cruelty.

Simultaneously with the filing of the complaint, defendant Macy filed his answer, through an attorney to whom he had, on November 7, 1934, some fourteen days prior to the commencement of the action for divorce in Nevada, given a power of attorney to represent him. On November 21, 1934, a decree was filed granting appellant a divorce upon the ground of cruelty from George Macy. Appellant remained in Reno until shortly before Christmas when she went to San Francisco and then to Hollywood, where she was New Year's eve. She remained in California until midsummer, returning to Reno over a week end, and later in the year spent about two weeks in Reno visiting friends. To various persons she stated her home was in New York and in her marriage license issued to herself and respondent in March, 1937, she gave her residence as Hollywood, although at the time of the trial of this action she claimed that she was then and at all times after October 5, 1934, had been a resident of Nevada. On January 28, 1937, appellant met respondent in Hollywood, and on March 29, 1937, they were married in Yuma, Arizona. This action for annulment was tried in the county of Ventura, California, the residence of respondent.

The first point urged for reversal is that the evidence is insufficient to support a finding that at the time of the marriage of respondent to appellant, she was then the wife of Macy. No direct evidence was adduced at the trial that Macy was living on the 29th of March, 1937, but respondent, in the absence of such evidence, relies upon various presumptions to support that fact.

Section 61 of the Civil Code provides that ''a subsequent marriage contracted . . . during the life of a former husband or wife . . . is illegal . . . unless:

''1. The former marriage has been annulled or dissolved, . . .

''2. Unless such former husband or wife is absent and not known to such person to be living for the space of five successive years immediately preceding such subsequent marriage, or is generally reputed or believed by such person to be dead at the time such subsequent marriage was contracted.
. . . '',

Macy was alive on November 21, 1934, at which time his answer was filed in the case of *Macy* v. *Macy,* some two years and four months before the marriage of appellant and respondent, and it would therefore be presumed under the second subdivision of the foregoing section that he was alive at the date of the marriage of appellant and respondent. (*People* v. *Glab,* 13 Cal. App. (2d) 528 [57 Pac. (2d) 588].)

█ It is also claimed there is no showing that Macy had not obtained a valid divorce from appellant prior to her marriage to respondent. In this connection it will be recalled that at the time appellant left for Reno there was still pending in New York, an order to show cause directed to Macy why he should not be enjoined from prosecuting an action for divorce in any state, except upon the statutory ground permitted in the State of New York. As adultery is the only ground for absolute divorce recognized in New York, which is also a crime in New York, in the absence of any showing that appellant had committed adultery, the presumption of innocence was applicable. Such a presumption is applicable in civil as well as criminal cases. (Jones on Evidence, vol. 2, sec. 195; *Guidera* v. *Lapiana,* 52 Cal. App. 460 [199 Pac. 557].)

It is also to be presumed that Macy did not violate the order to show cause and attempt to divorce appellant upon any other ground in another state.

It would therefore appear there was sufficient evidence in the record in the absence of anything to the contrary, to justify the finding that Macy was living on March 29, 1937, and that he had not obtained a divorce against appellant prior to that date, and inasmuch as presumptions are evidence they may be the basis for findings of fact. (Sec. 1957, Code Civ. Proc.; *Stafford* v. *Martinoni,* 192 Cal. 724 [221 Pac. 919].)

█ The next point urged is that the divorce granted by the courts of Nevada was null and void.

In order that Nevada acquire jurisdiction to grant a divorce it must appear that the person seeking such relief was an actual and *bona fide* resident of the State of Nevada for six weeks immediately preceding the commencement of an action. Appellant arrived in Reno, Nevada, on October 5, 1934. On October 1, 1934, she and her husband had in the State of New York, entered into an agreement whereby Macy

agreed to pay to appellant the sum of $2,500 in full satisfaction of all claims for alimony, maintenance or further support from him. On November 21, 1934, a decree of divorce was granted in Nevada, and shortly thereafter appellant left Nevada as hereinabove set forth.

The trial court, in the cause now before us, found that appellant went to Nevada for the sole purpose of obtaining a divorce from George H. Macy, and almost immediately after she had obtained such divorce, left Nevada and did not again reside there prior to her purported marriage to respondent. The court also found that appellant's purported residence in Nevada was solely for the purpose of obtaining a divorce from Macy, and that her residence in Nevada was merely a simulated or pretended residence, and that she never had been a *bona fide* resident of or domiciled in Nevada.

Section 9640 of the Nevada Compiled Laws requires that a plaintiff in an action for divorce shall have resided six weeks in that state before suit is brought, but the Nevada Supreme Court has held that residence in the state solely for the purpose of obtaining a divorce is not sufficient to confer jurisdiction, but that *bona fide* residence, with the intention of remaining must appear. (*Walker* v. *Walker*, 45 Nev. 105 [198 Pac. 433].) In *De Bonchel* v. *Chandler*, 296 Fed. 482, the factual situation was quite similar to the instant case. Plaintiff sued for breach of contract of marriage. The contract and breach were admitted but one of the defenses was that plaintiff was invalidly divorced from a former husband. The evidence showed a decree, regular upon its face, granted in Nevada upon substituted service, although with actual notice to defendant therein, the jurisdiction of the court resting upon plaintiff's residence in Nevada for the statutory period, the matrimonial domicile being in the State of Louisiana. To several, the plaintiff had declared Nevada to be her permanent home, while to others she stated she had gone to Reno merely to obtain a divorce. The Nevada divorce was held to be invalid, and the court in upholding that judgment, pointed out that while the Constitution of the United States required full faith and credit to judicial decrees of other states, and that principle was further supplied by the principle of comity, yet each state is given the right to regulate marriage and divorce within its borders.

The court there also pointed out that if a decree is void under the laws of the state where granted, it is void everywhere and subject to collateral attack. If, however, the divorce is granted by the state of the matrimonial domicile and that state has first and full jurisdiction over the question of divorce, and if rendered after regular service, the rights of the parties are fixed, and such decree must receive full faith and credit in all other states. But if one of the parties removes from the state of the matrimonial domicile, jurisdiction still remains to decree a divorce even through substitutional service and such decree is entitled to full faith and credit everywhere. If both leave the state of the matrimonial domicile, such domicile ends and the jurisdiction lapses, and such state has no further concern.

If either spouse removes to another state and acquires a domicile, jurisdiction attaches in that state based on its interest in and right to fix the matrimonial status of its new member by virtue of which it may decree such status. After such length of service as it may prescribe or for such causes as it may allow, a decree may be granted, effective in that state; but if made on substitutional service, and perhaps on personal service, if in evasion of the laws of another state, it is not entitled to full faith and credit in other states, but will, by comity, be recognized if not detrimental to the other states' policy or interest.

If the applicant for divorce is a mere sojourner in a state, in which the other party is not domiciled, that state has no jurisdiction to grant a decree on substituted service. (*Kegley* v. *Kegley,* 16. Cal. App. (2d) 216, 220 [60 Pac. (2d) 482]; *Warren* v. *Warren,* 127 Cal. App. 231 [15 Pac. (2d) 556]; *Latterner* v. *Latterner,* 51 Nev. 285 [274 Pac. 194]; *Presson* v. *Presson,* 38 Nev. 203 [147 Pac. 1081]); and such decree, even though authorized by its own laws is not entitled to full faith or credit as a matter of right or comity, and the actual residence of one party or the other in the state in which the decree is granted, being thus essential to the jurisdiction to make it, whether such domicile in fact exists, may be collaterally inquired into where the decree is sought to be used in another state.

In the instant case the facts show that Macy, the husband, appeared in the divorce action by an attorney, holding a power of attorney so to do. The fact this power of at-

torney was executed some two weeks prior to the filing of the complaint, and that the defendant interposed no particular defense, as well as the circumstances appearing in the record, suggests at least an attempt to confer jurisdiction upon the courts of Nevada by consent. It is unnecessary to dwell upon the rule that jurisdiction cannot be conferred by consent. (*Ryder* v. *Ryder,* 2 Cal. App. (2d) 426 [37 Pac. (2d) 1069] ; *Andrews* v. *Andrews,* 188 U. S. 14 [23 Sup. Ct. 237, 47 L. Ed. 366].)

█ Appellant questions the jurisdiction of the courts of California to inquire into the matter, but inasmuch as at least one of the parties, Brill, was a *bona fide* resident of California, and perhaps both, as appears from the marriage license, the courts of California had jurisdiction to declare the marriage a nullity. (*Anderson* v. *Anderson,* 7 Cal. (2d) 265 [60 Pac. (2d) 290] ; *Sullivan* v. *Sullivan,* 219 Cal. 734 [28 Pac. (2d) 914].)

It would therefore appear that the judgment of the trial court was just and proper under the facts and circumstances as shown by the record, and should be affirmed. It is so ordered. ·

Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 1, 1940.