**BRIGGS v. UNITED STATES.**
No. 47586.

United States Court of Claims.
May 1, 1950.

HOWELL, Judge.

Plaintiff sues to recover certain sums which he claims became due him during the period from May 11, 1942, to March 7, 1946, representing monetary allowances in lieu of quarters on account of a dependent wife while plaintiff was a noncommissioned naval officer, and increased rental and subsistence allowances on account of a lawful wife while plaintiff was a commissioned officer.

The statutory bases for plaintiff's claims are found in sections 4, 5, 6, and 10 of the Act of June 16, 1942, 56 Stat. 359, and in the amendment to section 4 contained in the Act of May 15, 1947, 61 Stat. 92, as follows:

"Sec. 4. The term 'dependent' as used in the succeeding sections of this Act shall include at all times and in all places a lawful wife and unmarried children under twenty-one years of age. It shall also include the father or mother of the person concerned provided he or she is in fact dependent on such person for his or her chief support * * *

"Sec. 5. Each commissioned officer on the active list, or on active duty, below the grade of brigadier general or its equivalent, in any of the services mentioned in the title of this Act, shall be entitled at all times, in addition to his pay, to a money allowance for subsistence. The value of one subsistence allowance is hereby fixed at 70 cents per day. To each officer of any of the said services receiving the base pay of the first, second, third or sixth period the amount of this allowance shall be equal to two subsistence allowances, and to each officer receiving the base pay of the fourth or fifth period the amount of this allowance shall be equal to three subsistence allowances: *Provided,* That an officer with no dependents shall receive one subsistence allowance in lieu of the above allowances.

"Sec. 6. Except as otherwise provided in this section, each commissioned officer below the grade of brigadier general or its equivalent, in any of the services mentioned in the title of this Act, while either on active duty or entitled to active-duty pay

Mr. Fred W. Shields, Washington, D. C., for the plaintiff. King & King, Washington, D. C., were on the brief.

John R. Franklin, Washington, D. C., with whom was Assistant Attorney General H. G. Morison, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

**138**

shall be entitled at all times to a money allowance for rental of quarters.

"To an officer having a dependent, receiving the base pay of the first period the amount of said allowance shall be $60 per month, * * * Provided, That an officer although furnished with quarters shall be entitled to rental allowance as authorized in this section if by reason of orders of competent authority his dependents are prevented from occupying such quarters.

\* \* \* \* \* \*

"Sec. 10. \* \* \*

"Each enlisted man of the first, second, or third grade, in the active military, naval, or Coast Guard service of the United States having a dependent as defined in section 4 of this Act, shall, under such regulations as the President may prescribe, be entitled to receive, for any period during which public quarters are not provided and available for his dependent, the monthly allowance for quarters authorized by law to be granted to each enlisted man not furnished quarters in kind: Provided, That such enlisted man shall continue to be entitled to this allowance although receiving the allowance provided in the first paragraph of this section if by reason of orders of competent authority his dependent is prevented from dwelling with him."

The amendment to Section 4 reads as follows: "Payment of allowances which have been or hereafter may be made under this Act based on a purported marriage and made prior to judicial annulment or termination of such marriage are valid: Provided, That it is adjudged or decreed by a court of competent jurisdiction that the marriage was entered into in good faith on the part of the spouse in military service or that, in the absence of such a judgment or decree, such finding of good faith is made by the head of the department concerned or by such officer of the department concerned as he may designate for the purpose."

The evidence in this case establishes certain facts relied on by plaintiff as substantiating his claim for allowances under the above-quoted statutes, and relied on equally by defendant as constituting a complete defense to plaintiff's claim.

The evidence reveals that on January 22, 1941, Myrtle L. Perring filed a complaint in a divorce action against Orville R. Perring in the Superior Court of the State of California, Los Angeles County, and that a summons in that action was personally served on Orville R. Perring on that same day. On defendant's failure to appear and answer, the court, on November 17, 1941, entered an interlocutory judgment of divorce by default in favor of Myrtle, approving a property settlement entered into between the parties, and providing that at the expiration of one year a final judgment would be entered if requested by one of the parties. Some six months later, on May 11, 1942, Myrtle Perring and Virgil Briggs, plaintiff in this action, were married in a religious ceremony in Yuma, Arizona, and received a marriage certificate issued according to the laws of that state. The Perring divorce complaint had recited that both parties were residents of Long Beach, Los Angeles County, California, and the marriage license issued to Briggs and Myrtle noted that Myrtle was a resident of Long Beach, California.

At the time of his marriage to Myrtle, plaintiff was a noncommissioned officer on active duty in the United States Navy. Apparently plaintiff and Myrtle lived together as husband and wife until July 1942 when plaintiff left the United States for duty in the Pacific Theater of Operations. Shortly after his marriage, plaintiff made an allotment to her at the rate of $175 per month which was paid to her from his funds for eleven months from June 1942 to April 1943. In April 1943, plaintiff terminated his allotment after receiving by mail, while overseas, a copy of a summons and complaint filed by Myrtle in the Superior Court of California, Los Angeles County, in which she sought to have her marriage to plaintiff dissolved either by divorce or annulment. Plaintiff did not sign the waiver accompanying the summons and made no appearance in this action, and on October 14, 1943, the Superior Court entered a default "Judgment of Annulment of Void Marriage." Subsequently plaintiff returned to the United States and appeared in the Superior Court, Los An-

geles County, upon a motion to set aside and vacate his default in the above mentioned proceeding, and, after hearing argument by both parties, the court set aside and vacated plaintiff's default and vacated and annulled the judgment of annulment of void marriage, granting Briggs until November 1, 1944, to file his answer in the reopened proceeding. After a rehearing with both parties represented, the court, on April 26, 1946, granted Myrtle an interlocutory decree of divorce from plaintiff.

From the date of his marriage, May 11, 1942, to June 30, 1943, plaintiff was paid the monetary allowance in lieu of quarters provided for a non-commissioned officer with a dependent wife, and from May 15, 1943, to June 30, 1944, plaintiff was paid the increased rental and subsistence allowance provided for an officer with a dependent wife in accordance with the statutory provisions set forth above. These payments, amounting to $1,440.40, were later checked from plaintiff's pay by the Navy Department on the ground that plaintiff did not have a lawful wife on and after May 11, 1942. From July 1, 1944, to March 7, 1946, when plaintiff's transfer to the Fleet Reserve became effective, plaintiff was credited with the rental and subsistence allowances of a bachelor officer without dependents and thereby received $1,679.85 less than he would have received as an officer with a dependent wife.

Defendant advances three main contentions to defeat plaintiff's claim, or part of it. First, defendant points out that the facts make no showing of actual dependency of Myrtle on plaintiff and that there is no evidence that plaintiff contributed anything to her support following April 1943 when he terminated her $175 a month allotment. From this, defendant concludes that plaintiff is not entitled, under the statute in question, to rental and subsistence allowances, citing Robey v. United States, 71 Ct.Cl. 561. In the Robey case, we found that plaintiff had deserted and refused to live with the wife he claimed as a dependent. The evidence affirmatively showed that Robey contributed nothing to his wife's support and we held that since plaintiff had repudiated his mor-

al and legal obligations to provide for his wife, he did not come within the spirit of the law in question and could not recover. In the later case of Strauss v. United States, 73 Ct.Cl. 690, we held that the dependency of a wife is presumed by law to exist where a lawful marriage is established and, in allowing plaintiff to recover, without a showing on his part that he contributed to his wife's support, we distinguished the case from the Robey case where that presumption was rebutted by defendant's proof of plaintiff's abandonment of his wife and refusal to support her. Again in the case of Rawlins v. United States, 93 Ct.Cl. 231, plaintiff's wife left him, against his wishes, to seek a divorce. She lost the first suit in which Rawlins appeared personally and defended, but in a subsequent action when Rawlins was on the West Coast and unable to appear at the trial and testify, Mrs. Rawlins succeeded in obtaining a divorce. During the time involved, Mrs. Rawlins refused plaintiff's proffered support but put him to considerable expense as a result of her actions. We again held that the statute in question does not require proof of dependency and in distinguishing the Robey case we said: "The court did not intend by the language there used to make dependence in fact the test of an officer's right to an allowance for 'dependents.' To do so would require a perpetual and universal inquisition into the family affairs of officers such as, for example, those whose wives have means of their own and are not at all or only partly supported by their husbands." Assuming that Briggs had a lawful wife for the period in question, we may presume, on the basis of the above cases, that she was dependent on him for support. In addition to the presumption of dependency that arises in such a case, the plaintiff herein has shown that for eleven months following his marriage to Myrtle he paid her $175 per month. There is no evidence that Briggs abandoned Myrtle or refused to support her and it is quite likely that the legal actions instituted by Myrtle put plaintiff to considerable expense. Accordingly, we must conclude that plaintiff has brought himself fully within both the letter and spirit of the statute.

■ Defendant's next contention is that, assuming Myrtle was not plaintiff's lawful wife during the period in question, plaintiff is not entitled to recover the $1,440.40 actually ·paid .to plaintiff by the Navy and later checked from his accounts, because this court has no jurisdiction to make the requisite finding that plaintiff married Myrtle in good faith as required by the Act of May 15, 1947, 61 Stat. 92. This law amends Section 4 of the Act of June 16, 1942, and provides that payments made under the act on the basis of a purported marriage prior to a judicial determination that such marriage was void, are valid provided, among other things, a court of competent jurisdiction decrees that the marriage was entered into in good faith on the part of the spouse in military service. Defendant asserts that the California Superior Court for Los Angeles County was the proper court to make such a·determination and that this court is wholly without power to do so in·this action. We cannot agree with this contention. The question of plaintiff's good faith ·in marrying Myrtle was not an issue in any of the proceedings involving those parties· in the California court and consequently that court made no findings with respect· thereto. In the instant case, however, plaintiff is suing under a federal statute which this court has full power to interpret and·apply and in so doing it is incumbent upon us to pass upon the issue of the good faith of plaintiff. In passing upon that issue, we must first note that there is a strong presumption in favor of plaintiff to the effect that he did not knowingly proceed to contract a bigamous marriage, live in adultery, and defraud the Government. Defendant has offered no evidence to indicate that plaintiff in fact did so. In addition, plaintiff made an allotment to Myrtle which was far in excess of the amount required of an enlisted man

in the Navy and which he would have been unlikely to make to someone who had no valid legal claim·for his support. We must conclude, therefore, that regardless of the actual validity of plaintiff's marriage, he entered into it in good faith, supposed himself to be legally married to Myrtle, and is therefore entitled to recover the $1,440.40 actually paid to him and later checked from his accounts.

Finally defendant contends that plaintiff is not entitled to recover on the balance of his claim representing the $1,679.85 not actually paid him and not covered by the above amendment to section 4 of the Act of June 16, 1942, because his claimed dependent, Myrtle, was not his "lawful wife" as required by the unamended portion of section 4, asserting that she was still married to · Perring at the time of her marriage to Briggs. We agree with defendant that the amendment to section 4 does not cover this· portion of plaintiff's claim since it involves moneys not actually paid· to plaintiff. The question whether or· not Myrtle was plaintiff's "lawful wife" presents a much more troublesome problem.

In meeting this issue both parties have referred in a limited manner to the law of California which they seem to concede will have some bearing on the marital status of parties subject to that state's jurisdiction, but they disagree on whether we must give full faith and credit to the California court's decrees setting aside the annulment and granting the parties a divorce, thus presumably recognizing the validity of their marriage. Plaintiff, we believe, has stated the real issue before us in his contention that a presumption of validity arises in favor of a final marriage and that the burden of rebutting such presumption is on the party attacking its validity.[1]

1. We cannot agree with plaintiff's statement that under California law a void marriage is only void from the date of the decree of nullity, citing In re Gosnell's Estate, 63 Cal.App.2d .38, 146 P. 2d 42. In that case the California court applied the law of Nevada where the marriage sought to be annulled took place, and, since the Nevada statute pro-vided that a decree of nullity renders the marriage void only from the date of the court decree, the California appellate court reversed the trial court's decree making the marriage void from the beginning. The Briggs marriage took .place in the state of Arizona and, in the absence of proof of the law of that state, we assume it to be the same as California

As to the conclusive effect of judgments of divorce or annulment on third parties, strangers to such actions, the California Civil Code provides, Section 86, that a judgment of nullity is conclusive only as against the parties to the action and those claiming under them. Price v. Price, 24 Cal.App.2d 462, 75 P.2d 655; In re Smith's Estate, 33 Cal.2d 279, 201 P.2d 539; Id., Cal. App., 193 P.2d 90. Section 91 of the Civil Code provides that the effect of a judgment of divorce is to restore the parties to the status of unmarried persons. The question of whether or not there was a valid marriage is not the real issue before the court in a divorce proceeding and the California cases uniformly hold that a judgment of divorce is not binding on third parties (strangers to the action) as to the previous validity of the marriage. Blumenthal v. Blumenthal, 1929, 97 Cal.App. 558, 275 P. 987. The defendant in the instant case was certainly a stranger to the actions resulting in the setting aside of the annulment and the granting of a divorce to Myrtle Briggs, and in a case such as this where plaintiff's right to recover and the effectiveness of the Government's defense depends on the validity of plaintiff's marriage to Myrtle, the Government is not bound by the California court's decree revoking the judgment of annulment even though the very subject matter of that action was the validity of the marriage in question and the court's decree in effect holds the marriage to have been valid.[2]

Granting that the defendant in this suit is not bound by the California court's judgment setting aside the annulment decree, it is still faced with the presumption, venerable in the law of this country and Great Britain and consistently recognized in California, that in the case of a second marriage, that marriage, shown to have been entered into in accordance with the requirements of the jurisdiction where it took place, is a valid marriage and the burden of showing its invalidity is on the person asserting such invalidity, Patterson v. Gaines, 6 How. 550, 16 Curt. 813, 12 L.Ed. 553; and this is true even though that burden is one of proving the negative. Osmak v. American Car & Foundry Co., 1931, 328 Mo. 159, 40 S.W.2d 714, 77 A.L.R. 729; 34 A.L.R. 464. In the case before us, plaintiff has proved a ceremonial marriage in accordance with the laws of Arizona, and subsequent cohabitation with the person so married; his own capacity to contract a valid marriage has not been questioned. Thus, plaintiff has made a prima facie case of a valid marriage and the burden is on the defendant to produce evidence sufficient to show the contrary.

Our next question is, what evidence does the law consider sufficient to rebut this presumption of validity of a final, ceremonial marriage? In general, one attacking the validity of a final marriage consummated in legal form on the ground that one of the parties to the marriage was incapacitated to contract such marriage by reason of an existing prior marriage, must show the validity of such former marriage, and that at the time of contracting the final marriage the former spouse was living and the former marriage had not been legally dissolved by divorce or annulment. Routledge v. Githens, 118 Or. 70, 245 P. 1072, 45 A.L.R. 922. If the party attacking the validity of the final marriage fails to discharge this burden of proof as to any one of those matters, the presumption of validity of the final

law which provides in section 61 of the Civil Code that a marriage contracted by a person during the life of that person's former undivorced spouse, is void from the beginning.

2. In this respect the law of California is at variance with the majority of states in the United States. In general, the courts of other states hold that a judgment of annulment of a void marriage is conclusive as to everyone with respect to the marital status of the parties to the action. Oborn v. State, 143 Wis. 249, 126 N.W. 737, 744, 31 L.R.A.,N.S., 966; Sleicher v. Sleicher, 251 N.Y. 366, 167 N.E. 501; see Sec. 1908 of California Code of Civil Procedure on effect of judgments, to which Sec. 86 of the Civil Code is an exception; Price v. Price, 24 Cal.App.2d 462, 75 P.2d 655; In re Smith's Estate, supra.

142

marriage will prevail. In re De Force's Estate, 119 Or. 556, 249 P. 632.

■ The attacking party's burden of showing the validity of the alleged former marriage is illustrated in the case of United States v. Green, C.C.S.D.Iowa 1899, 98 F. 63, 66. In that case the Government sued the widow of a deceased sergeant-major to recover pension moneys paid to her on the ground that her marriage to the deceased was invalid because at the time of such marriage deceased had a lawful living wife, one Eliza Jane Callahan. The evidence established that Eliza and deceased had attempted a divorce which was admittedly invalid because the court granting it had no jurisdiction over divorce matters; it was further shown that Eliza was alive at the time of deceased's marriage to the defendant; in addition the Government showed a ceremonial marriage between Eliza and decedent. The court, however, denied recovery on the ground that the Government had failed to show that Eliza and deceased were legally competent to contract marriage and said, "It may very well be that this prior marriage was legal and binding. It may be that it was not. * * * in the judgment of the court, the evidence adduced does not prove the validity of the prior marriage, but leaves the question uncertain." In the instant case there has been no showing by the defendant of the legal capacity of Myrtle and Perring to contract marriage, nor any direct proof that they were in fact married. Plaintiff Briggs is no more bound by the final divorce decree in the Perring divorce as to the marital status of Perring and Myrtle than the Government is by the divorce finally granted to Myrtle and Briggs. Rediker v. Rediker, 1950, 95 Cal.App.2d ——, 212 P.2d 612. Myrtle's sworn statements in her divorce complaint against Perring *would* be conclusive against her (in the absence of explanation) as to the fact of her marriage to Perring, either in a suit by Briggs for annulment of his marriage to her, or if Myrtle were the plaintiff in the present action against the Government. Hunter v. Milam, 5 Cal. Unrep. 107, 41 P. 332; In re Kiesel's Estate, 35 Wyo. 300, 249 P. 81; Walker v.

United States, 7 Cir., 1950, 180 F.2d 217, 219. As to Briggs in his present suit against defendant, such statements are hearsay and cannot be relied on by defendant to prejudice Briggs. Hull v. Rawls, 27 Miss. 471.

■ If we should assume that the marriage between Myrtle and Perring was valid, defendant would still have the burden of showing that such marriage was not dissolved prior to Myrtle's marriage to Briggs. Defendant has sought to meet this burden by showing that at the time of Myrtle's marriage to Briggs her divorce from Perring was not final and that the final decree was not entered until six months after such marriage. It has been held that proof that one party to a former marriage has not secured a divorce is not proof that the other party (Perring) to such marriage has not done so. Ladner v. Pigford, 138 Miss. 461, 103 So. 218. In the case of Clendenning v. Parker, 69 Cal.App. 685, 231 P. 765, the court held that the burden of showing no dissolution of the former marriage by divorce or annulment had been met where the attacking party's proof showed (1) a prior valid marriage, (2) that the parties lived together as husband and wife in Seattle for ten months, (3) that the wife went to California and, *within a few days* after leaving her Seattle spouse, married Husband No. 2, (4) that the records of the county in which Seattle is located did not show that any action for divorce or annulment of the first marriage had ever been filed, (5) that the first husband was alive on the date of the second marriage, and (6) that the wife had not had sufficient time to acquire a residence elsewhere in order to obtain a divorce or annulment of the marriage. In the case of Brill v. Brill, 38 Cal.App.2d 741, 102 P.2d 534, an action by Brill against his wife for annulment of a void marriage, the proof showed an invalid Nevada divorce procured by the wife against her first husband. To rebut the presumption that the first husband had had the marriage dissolved before his wife contracted the second marriage, it was shown that an order to show cause was still outstanding in New York, the legal residence of the first husband, directed to the first

husband to show cause why he should not be enjoined from prosecuting an action for divorce in any state except New York for adultery. The California court held that since adultery is a crime in New York, in the absence of any showing that the wife had committed adultery, the presumption of innocence is applicable and defeats the presumption that husband No. 1 had secured a divorce in New York, it being also presumed that husband No. 1 did not violate the order to show cause and attempt to secure a divorce in another state on some ground other than adultery. The California court held the presumption of validity of the Brill marriage had been rebutted and it granted the annulment. In the instant case the defendant has introduced in evidence the divorce complaint filed in the suit by Myrtle against Perring in which it is stated that the parties to that action separated in 1940. Between that time and Myrtle's marriage to Briggs in May of 1942, Mr. Perring had ample time to procure either a divorce or annulment from Myrtle in California and defendant has made no attempt to show that he did not do so. In the case of In re Smith's Estate, 33 Cal.2d 279, 201 P.2d 539, the court held that reports from the clerks of 56 of California's 58 counties showing that no record of a divorce or annulment between the testator and the woman claiming to be his wife were persuasive evidence to show that no divorce or annulment had ever been obtained. In Brokeshoulder v. Brokeshoulder, 84 Okl. 249, 204 P. 284, 34 A.L.R. 441, evidence sufficient to establish the fact that a husband had not been divorced from his first wife at the time of his marriage to the second wife, consisted of depositions by the county clerks of the counties where the parties to the first marriage resided at the time in question, to the effect that no divorce or annulment had been granted. See also Dockery v. Brown, Tex.Civ.App.1947, 209 S.W.2d 801. However, in the absence of such negative proof that no divorce or annulment had been secured by the other party to the prior marriage, the courts have held the presumption of the validity of a later marriage consummated by a formal ceremony, is superior to and controlling over the mere presumption that a prior marriage continued in force. Moran v. Superior Court, 38 Cal.App.2d 328, 100 P. 2d 1096; Ryder v. Ryder, 2 Cal.App.2d 426, 37 P.2d 1069; Hamburgh et al. v. Hys et al., 22 Cal.App.2d 508, 71 P.2d 301. In the case before us the defendant has made no attempt whatsoever to show that Perring did not procure a divorce or annulment and the presumption that he did so stands unassailed.

Finally, the courts of California have held that in support of the validity of a final marriage, the death of the alleged former spouse prior to such marriage may be presumed. Hunter v. Hunter, 111 Cal. 261, 43 P. 756, 31 L.R.A. 441, 52 Am. St.Rep. 180; Wilcox v. Wilcox, 171 Cal. 770, 155 P. 95. Section 1963 of the California Code of Civil Procedure lists a number of "disputable presumptions" of which the first is that a person is innocent of crime or wrong, and the 26th is that a person not heard from for seven years is dead. The corollary to the latter presumption would be that a person known to be alive is presumed to continue living at least until the seven years has passed. In the instant case there is evidence that Perring, Myrtle's former husband, was alive on January 22, 1941. This evidence is in the form of an affidavit of service of the summons in Myrtle's divorce action, in which the process server swore that he personally served Perring with the summons in Long Beach, California. This act occurred approximately one year and three months prior to Myrtle's marriage to plaintiff Briggs and thus there arose a presumption that Perring was still alive on May 11, 1942, when Myrtle and Briggs were married. However, the law in California, and in this country generally, is that where the presumptions of innocence and the validity of a marriage conflict with the presumption of the continuance of the life of a former spouse, and neither presumption is aided by proof of facts or circumstances cooperating with it, the presumptions of the validity of the marriage and of innocence prevail. The rule is not a rigid one to be inflexibly followed but is pri-

marily a question of fact to be resolved according to the circumstances of the particular case. In the case of Rex v. Twyning, 2 Barn. & Ald. 386, the wife of a soldier who went abroad, married again in a little over a year and the court held that the presumption of the validity of the second marriage prevailed over the presumption that the first husband was alive on the date of the remarriage. In Rex v. Harborne, 2 Adol. & El. 540, where the wife had been seen within 25 days of the second marriage of the husband, the court held that the presumption of the continuance of life of the first wife should prevail. "So, also, the age, condition of health, habits of the absent party, and many other circumstances, may be brought in to aid or rebut the presumption of the continuance of life. * * * It may, however, be safely said that when there are no circumstances to aid the presumption of the continuance of life, the presumption of innocence and of the validity of the second marriage should, in general, prevail." Johnson v. Johnson, 114 Ill. 617, 3 N.E. 232, 236, 55 Am.Rep. 883; Hunter v. Hunter, supra, Maier v. Brock, 222 Mo. 74, 120 S.W. 1167, 133 Am.St.Rep. 513, 17 Ann.Cas. 673; Bishop on Marriage and Divorce, § 456. In Prentis, District Director of Immigration v. McCormick, 6 Cir., 1928, 23 F.2d 802, 803, the Director of Immigration proved that an English national who had gone through a marriage ceremony with an American citizen in the United States had been previously married in England and had not been divorced from such prior husband. The court held that her marriage to the American citizen was presumptively valid; that proof of the prior marriage and that no divorce dissolving it had been obtained were insufficient to rebut this presumption of validity in the absence of a showing that the first husband was living when she married the second. In Moran v. Superior Court, supra, the Court considered the problem of such conflicting presumptions and stated that the presumption of validity of a second marriage may be controverted by evidence that the former spouse is living and that neither a divorce nor annulment of the former marriage was ever procured.

"Positive or direct evidence is preferable to indirect evidence or mere presumptions of law" [38 Cal.App.2d 328, 100 P.2d 1097] (such as the presumption of the continuance of life). See also In re Estate of Newman, 34 Cal.App.2d 706, 94 P.2d 356, an action to contest the will of decedent leaving his property to his "wife," the contestants urging that the beneficiary of the will was not decedent's lawful wife because at the time of their marriage she had a prior undivorced husband who was then living. The cases have also held that where the person asserting a valid second marriage has in fact deserted the prior undivorced spouse, then the presumption of death of the former spouse is not available to the wrongdoer. People v. Glab, 13 Cal.App.2d 528, 57 P.2d 588. The only California case we have seen in which the court appears to have permitted a bare presumption of continuance of life to outweigh the presumption of a valid second marriage, is Brill v. Brill, supra. In that case the presumption of continuance of life of the former spouse arose from the fact that two and one-half years prior to the second marriage, the former spouse was shown to have been alive. The court quoted section 61 of the California Civil Code, subdivision (2) providing that certain marriages of undivorced persons might be considered valid until declared invalid, where the parties entered into them in good faith, believing the former spouse to have died, and where such former spouse had not been heard from for five years prior to such marriage. This portion of the Brill decision cites as authority the case of People v. Glab, supra, a criminal case of forgery where the accused questioned the capacity of a State's witness to testify on the ground that he was validly married to the accused. In the Glab case the court did not rely on the presumption of the continuance of life to rebut the presumption of the validity of the marriage. On the contrary, it relied on actual proof that the witness had deserted his first wife, that he had actually heard from her just prior to his second marriage and knew at that time that she was alive and that she was at no time reputed to be dead. The court concluded that the marriage (second

one) did not come within the exception outlined in subdivision (2) of section 61 of the Civil Code. It would seem that that section of the Civil Code is not applicable at all unless it is shown that the prior spouse was in fact living at the time of the second marriage, as otherwise no situation would be presented which the party would be called upon to combat by a showing of an honest belief that such former husband or wife was then deceased. The Brill case has never been cited on that particular point and the great weight of California authority is to the contrary. In a frequently cited case, People v. Feilen, 58 Cal. 218, at page 222, 41 Am.Rep. 258, where the former spouse was heard from less than five years prior to an alleged bigamous marriage, a conviction of bigamy was reversed, the court saying, "Now, assuming that it was proven the first wife was living—five years not having elapsed—there are then two presumptions, the one of innocence operating in favor of defendant, and the other of the continuance of life from the proof of prior existence operating against him. Which should obtain, and be adjudged superior? * * * The rule as declared by Mr. Bishop (see Bishop on Stat. Crimes, § 611) is that they should be held to neutralize each other, and the issue as to the continuance of life from the proof of prior existence should be left to the jury as a naked matter of fact, divested of any presumption of law. * * * The evidence, taking the strongest view of it against defendant, proved that the first

wife was living about three years prior to the day of the second marriage. We cannot perceive that this evidence furnished a reasonable inference that the first wife was alive in July 1880, so as to establish the guilt of the defendant beyond a reasonable doubt." In the Brill case the problem of a possible conflict between the two presumptions was not discussed. At most it held that the defendant had not brought herself within the provisions of Section 61 (2) of the Civil Code because, among other things, she could not say she had not heard from her husband for five years, because he appeared in her Reno divorce action a little more than two years previous to her second marriage.

In the instant case the defendant has shown that Myrtle's prior husband was alive a year and three months prior to her marriage to plaintiff. No other facts or circumstances have been shown. Defendant's evidence on this point does raise a presumption of the continuance of life of Perring but that alone is insufficient to rebut the stronger presumptions in favor of the validity of the second marriage and innocence of the crime of bigamy.

We conclude that defendant's evidence has not enabled it to meet the burden of proof imposed on it by this case, i. e., that of showing a prior valid marriage, that such marriage was not dissolved by annulment or divorce (which might have been procured by Perring), or by the death of Perring sometime between January 22, 1941, and May 11, 1942.[3] We accordingly

---

3. In spite of the fact that we are not bound on the question of the validity of plaintiff's marriage by the action of the California court in setting aside the annulment and granting a divorce, we find it hard to believe that the California court did not consider carefully the question of the validity of the marriage and if the facts had warranted the granting of an annulment, the court would have done so. Defendant has suggested that the California court may have been motivated by the fact that the California statutes vest no property rights in either of the parties to a *void* marriage and that out of sympathy for plaintiff, who may have given Myrtle considerable property during his marriage to her, the court de-

cided to revoke the annulment and grant a divorce thus permitting the application of the statute relating to the division of community property in a divorce case. We call defendant's attention to the cases of Schneider v. Schneider, 183 Cal. 335, 191 P. 533, 11 A.L.R. 1386; Sanguinetti v. Sanguinetti, 9 Cal.2d 95, 69 P.2d 845, 111 A.L.R. 342, and Santos v. Santos, 32 Cal.App.2d 62, 89 P.2d 164, in which the courts held that where a man and wife innocently enter into a marriage contract and believe themselves to be husband and wife, the property acquired by their joint efforts will be divided equally between them. We do not believe, as suggested by the defendant, that the California court's action in setting

hold that plaintiff is entitled to recover the $1,679.85 he would have received had the Navy recognized the validity of his marriage to Myrtle and classified him as an officer with a dependent wife. With respect to the $1,440.40 which was checked from his funds and which we have held he is entitled to recover on our finding of good faith under the amendment to Section 4 of the Act of June 16, 1942, he is also entitled to recover it on the basis of our conclusion that his marriage to Myrtle was valid. The total sum to which plaintiff is entitled, as computed by the General Accounting Office, is $3,120.25. Judgment for plaintiff will be entered for this amount.

It is so ordered.

MADDEN and LITTLETON, Judges, concur.

WHITAKER, Judge (dissenting in part).

I cannot agree that the plaintiff is entitled to recover allowances for a dependent after the time the Government discontinued payments to him therefor. In order to do so, he must show that he had a lawful wife. The statute says a man is entitled to certain allowances if he had a lawful wife. The burden is on him to show that he had one. The Government is not under the burden of showing that he did not have one.

The proof shows that plaintiff's alleged wife had formerly married Orville R. Perring, and that on January 22, 1941, she filed a divorce action against him. On November 17, 1941, the court entered an interlocutory judgment of divorce, providing that at the expiration of one year a final judgment would be entered if requested by one of the parties. Prior to the expiration of this one year period, about six months after the entry of the interlocutory judgment, plaintiff married Mrs. Perring. Hence, he married her while she was still the wife of Orville R. Perring, unless Perring had died in the meantime.

Plaintiff has introduced no proof to show that Perring was dead. If she was Perring's wife at the time of her marriage to Briggs, then her marriage to him was void, and she did not become Briggs' lawful wife. In order to bring himself within the statute, plaintiff had to show that he had a lawful wife, and it was, therefore, necessary for him to show that Perring was dead at the time he married Mrs. Perring. The burden is not on the defendant to show that Perring was not dead.

It is, of course, true, as the majority opinion says, that the marriage between Briggs and Myrtle L. Perring is presumed to have been a valid marriage, but this presumption, it seems to me, is rebutted by the fact that prior to the expiration of the one-year period, before which final judgment of divorce from Perring could not have been entered, the marriage between Myrtle Perring and Briggs took place. Presumptively this made Briggs' marriage to her void. In order to rebut this presumption, the burden was on Briggs to show that Perring was dead.

It having been proven that Perring was living on January 22, 1941, it is to be presumed that he was still living on May 11, 1942, and plaintiff has introduced no proof to rebut this presumption. Presumably Perring was living when his wife married Briggs. If he was, then she did not become Briggs' "lawful wife."

The burden was not on the defendant to show that the marriage between Myrtle L. Perring and Virgil O. Briggs was invalid. The burden is on the plaintiff to show that it was valid in order to show that he had a lawful wife, and this burden I do not think he has carried until he has shown Orville R. Perring was dead at the time he married Mrs. Perring.

I must, therefore, respectfully dissent from that part of the opinion of the ma-

---

aside the judgment of annulment and entering a judgment of divorce was the result of the court's "great liberality," but rather the desire of the court to enter the proper decree on the facts ultimately before it when both parties were present. The grounds for divorce in California are entirely different from the grounds for annulment and the court would scarcely grant the one where the other was indicated.

jority which holds that plaintiff is entitled to recover the allowance for a dependent from June 30, 1944, the date the Navy discontinued payment of the allowance, to March 7, 1946, the date of his transfer to the Fleet Reserve, which amounts to $1,679.85. I agree that he is entitled to recover $1,440.40, the amount which was paid him but which was later deducted from his pay.

JONES, Chief Judge, concurs in the foregoing opinion.